## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRINCETON DIGITAL IMAGE CORPORATION,

                Plaintiff,

    vs.

NORDSTROM.COM LLC,
NORDSTROM.COM INC., and
NORDSTROM INC.,

                Defendants.

Civil Action No.  1:13-cv-00408-LPS

REDACTED PUBLIC VERSION

---

### INTERVENOR ADOBE SYSTEMS INCORPORATED'S
### OPPOSITION TO PLAINTIFF PRINCETON DIGITAL IMAGE CORPORATION'S
### MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

Tara D. Elliott (#4483)
Tara.Elliott@wilmerhale.com
Rachel Weiner Cohen (*pro hac vice*)
Rachel.Cohen@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, DC 20006
(202) 663-6000

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Intervenor*
*Adobe Systems Incorporated*

Dated: March 28, 2016
Redacted Version:  April 1, 2016

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.  SUMMARY OF THE ARGUMENT ............................................................................2

III. STATEMENT OF FACTS ........................................................................................2

IV.  LEGAL ARGUMENT..............................................................................................6

     A.   Standard For Setting Aside Entry of Default............................................6

     B.   Setting Aside the Clerk's Entry of Default Will Prejudice Adobe ..........6

     C.   Princeton Lacks A Meritorious Defense...................................................7

     D.   The Default Resulted From Princeton's Culpable Conduct ...................11

     E.   The Effectiveness of an Alternative Sanction.......................................14

F.   CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Antonious v. Spalding & Eventflo Companies, Inc.*,
   275 F.3d 1066 (Fed. Cir. 2002)..............................................................................8

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
   597 F.3d 1374 (Fed. Cir. 2010)..............................................................................9

*Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*,
   756 F.2d 14 (3d Cir. 1985)......................................................................................6

*Gross v. Stereo Component Systems, Inc.*,
   700 F.2d 120 (3d Cir. 1983)..................................................................................12

*Hritz v. Woma Corp.*,
   732 F.2d 1178 (3d Cir. 1984)................................................................................12

*Jackson v. Delaware Cnty*,
   211 F.R.D. 282 (E.D. Pa. 2002).................................................................12, 13, 14

*Poulis v. State Farm Fire & Cas. Co.*,
   747 F.2d 863 (3d Cir. 1984)..............................................................................6, 14

*Rockwell Transp. Servs., Inc. v. Int'l Printing & Envelope Co., Inc.*,
   C.A. No. 02–724, 2002 WL 1018928 (E.D. Pa. May 20, 2002).......................12

## STATUTES, RULES, AND REGULATIONS

Federal Rule of Civil Procedure 6(d) ........................................................................1, 4

Federal Rule of Civil Procedure 11 ...........................................................................3, 8

Federal Rule of Civil Procedure 12(a) ......................................................................1, 4

Federal Rule of Civil Procedure 55(a) ......................................................................1, 5

When Princeton failed to timely answer Adobe's complaint in intervention nine months ago, Adobe asked counsel for Princeton if it intended to do so and indicated that it would request an entry of default if Princeton failed to file one.  After requesting default, Adobe repeatedly cited to the then-pending request in its papers.  Nevertheless, eight months after Adobe filed that request for default, Princeton represented to the Court that it "did not recall" Adobe's pending request.  Now, Princeton erroneously contends that the Court had previously "denied" Adobe's request during the Rule 16 scheduling conference.  Princeton's latest assertions are belied by the facts and are contrary to law.  For at least these reasons, and those stated herein, this Court should deny Princeton's motion to set aside the Clerk's entry of default.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Unable to enforce its license to U.S. Patent No. 4,813,056 (the "'056 Patent") without court intervention, Adobe was compelled to file a motion to intervene in Princeton's suits against Adobe's customers, including Nordstrom.  (D.I. 11.)[1]  Adobe filed a complaint in intervention in this case on May 8, 2015, alleging breach of contract and patent misuse.  ('408 D.I. 50.)  Under Rules 6(d) and 12(a) of the Federal Rules of Civil Procedure, Princeton's deadline to answer, move, or otherwise respond to Adobe's complaint was June 1, 2015.  Despite two inquiries from counsel for Adobe ('408 D.I. 57-1 Exs. B, C), Princeton failed to respond.  On July 27, 2015, Adobe requested that the Clerk enter default pursuant to Federal Rule of Civil Procedure 55(a).  ('408 D.I. 57.)  After the Court heard oral argument on March 8, 2016 on that request and all pending motions, the Clerk entered the default.  ('408 D.I. 88.)  Princeton moved to set aside the Clerk's entry of default on March 11.  ('408 D.I. 89.)  Adobe now opposes Princeton's motion.

---

[1] Unless noted, D.I. citations refer to the docket in the lead case *Princeton Digital Image Corporation v. Office Depot Inc.* (No. 13-239).

## II.    SUMMARY OF THE ARGUMENT

The Court should deny Princeton's motion for at least the following reasons: (1) setting

aside the Clerk's properly entered default would prejudice Adobe; (2) Princeton lacks a

meritorious defense; and (3) the default resulted from Princeton's culpable conduct.

## III.   STATEMENT OF FACTS

The docket in this matter chronicles years of litigation—including Adobe's motion to

intervene, two motions for sanctions, and several pleadings—that recite the tortured history

between the parties in these and related cases.  Adobe briefly recaps the relevant facts here to

correct the record:



Adobe and Princeton entered into a valid and enforceable agreement

("Adobe License" or "License") licensing the '056 Patent.  (Ex. 2.)[2]

On December 21, 2012, Princeton filed the first of more than fifty nearly identical patent

infringement suits in the District of Delaware, alleging infringement of the expired '056 Patent.

(*See, e.g.*, D.I. 1.)  Princeton's counsel has admitted that neither he nor any of his co-counsel

conducted *any* independent pre-suit investigation.  (Ex. 30 at 24:18-25:13; Elliott Mar. 28, 2016

Decl. Ex. A at 49:18-20.)  Thomas Meagher, Princeton's President and signatory on the

Adobe License, allegedly conducted a pre-suit investigation.  (Ex. 2; D.I. 32.)  But neither Mr.

Meagher nor his "agent" did anything to confirm whether the JPEG images on Defendants'

---

[2] Unless noted, citations to "Ex." refer to Exhibits cited in Ms. Elliott's August 21, 2015
Declaration (D.I. 68).

websites were encoded with Adobe products notwithstanding Princeton's admissions that the

metadata showing that the images were encoded using licensed Adobe products was available

prior to filing suit.  (*See* Ex. 27 at 15; Ex. 30 at 30:18-23, 31:21-32:20.)  And it *"never occurred"*

to Mr. Meagher that the Adobe License or "any licensed software" would "have any impact [on

these] . . . litigations" before filing suit.  (D.I. 73 at 5.)

For more than two years, Princeton pursued this litigation even though it was unable to

assert a legitimate basis for filing or maintaining suit against Nordstrom.  (*See, e.g.*, D.I. 37 at 6;

D.I. 84 at 9.)  On October 24, 2014, Nordstrom sent Princeton a copy of a declaration, which

made clear that it used only Adobe-licensed products to create the images on its website in 2007.

(Ex. 23.)

Also on October 24, 2014, counsel for Adobe reiterated Adobe's concerns with

Princeton's litigation conduct in a teleconference.  (Ex. 22.)  On October 30, 2014, Adobe's

counsel again told Princeton that its continued prosecution of claims based on licensed activity

was unwarranted, frivolous, a breach of contract, and in violation of Rule 11.  (*Id.*)  Princeton

ignored Adobe's letter.  On November 26, 2014, Adobe filed its second motion to intervene on

behalf of licensed customers sued by Princeton.  (D.I. 11.)  On January 14, 2015, after providing

notice under Rule 11's 21-day safe harbor provision, Adobe first moved for sanctions based on

four separate grounds.  (D.I. 27.)  Over Princeton's objections, the Court granted Adobe's

motion to intervene and denied without prejudice its motion for sanctions.  (D.I. 45.)

On May 8, Adobe filed an intervenor complaint alleging breach of contract and patent

misuse, and caused its complaint to be served on Plaintiff Princeton Digital Image Corporation via

CM/ECF pursuant to Federal Rule of Civil Procedure 5 and the Revised Administrative Procedures

Governing Filing and Service by Electronic Means of the United States District Court for the District

of Delaware.  ('408 D.I. 50; '408 D.I. 57-1 ¶ 3, Ex. A.)

-3-

On May 19, 2015, based on the very same declaration it had received on October 24, 2014, Plaintiff filed a stipulation of dismissal with regard to its own claims against Defendants in the above-captioned matter. (Ex. 23; '408 D.I. 51; D.I. 80-2 at 2-3.) This Court signed and entered that stipulation on May 28, 2015. At the same time, the Clerk noted on the docket that the action was "Terminated." Counsel for Adobe promptly contacted the Court to notify it that the action had been terminated in error and that Adobe's Intervenor Complaint remained pending. ('408 D.I. 57-1 ¶ 4.) The Court indicated that it would reopen the action. (*Id.*)[3]

Having received an answer and counterclaim from Princeton in the eight other related actions on May 29, 2015 (*see, e.g.*, D.I. 51), but not in this action, counsel for Adobe promptly contacted counsel for Princeton, and asked whether Princeton would be filing an answer in the above-captioned case, as it had done in response to Adobe's Intervenor Complaints in the related matters.[4] ('408 D.I. 57-1 ¶ 5, Ex. B.)

Under Rules 6(d) and 12(a) of the Federal Rules of Civil Procedure, Plaintiff's deadline to answer, move, or otherwise respond to Adobe's Intervenor Complaint was June 1, 2015. Counsel for Princeton provided no response. As a courtesy, on June 12 counsel for Adobe again notified counsel for Princeton that it had not filed an answer in the above-captioned case. ('408 D.I. 57-1 ¶ 7, Ex. C.) Counsel for Adobe further represented that it would not object to Princeton filing a late answer, provided it was served by Wednesday, June 17. ('408 D.I. 57-1

---

[3] Although Adobe does not have access to the precise date that the Court "reopened" the case, the Court issued an Order setting a Rule 16 scheduling teleconference in this case on July 16, 2015. ('408 D.I. 56.) And, at least as of August 4, 2015, Princeton understood that the case was not "Terminated" as it filed the parties' "Proposed Scheduling Order" in this case. (*See* '408 D.I. 59.)

[4] Adobe's motion to dismiss Princeton's counterclaim in each of the eight related cases is fully briefed. (*See, e.g.*, D.I. 53.) On March 8, 2016, the Court heard oral argument on Adobe's motion.

Ex. C.)  Adobe received no response from Princeton, and Princeton did not request nor receive an extension of time to respond to Adobe's Intervenor Complaint.  (*See* '408 D.I. 57-1 ¶ 7.)

Notwithstanding Adobe's repeated efforts to determine whether Princeton intended to respond ('408 D.I. 57-1 Exs. B, C) *and* the Court's entry of a Rule 16 scheduling conference on July 17, 2015 *in this case* ('408 D.I. 56), Plaintiff failed to answer or otherwise respond to Adobe's complaint.  Thereafter, on July 27, 2015, Adobe respectfully requested that the Clerk enter default against Princeton pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ('408 D.I. 57.)  Adobe's request remained pending until the Clerk entered default after the Court's March 8, 2016 hearing.  ('408 D.I. 88.)

During the Court's March 8, 2016 hearing "on all pending motions" (D.I. 91, '408 D.I. 87), Princeton first contended it "did not recall" Adobe's pending request for default in the Nordstrom case despite the fact that Adobe repeatedly cited to the then-pending request in its papers. (Elliott Mar. 28, 2016 Decl. Ex. A at 91:6-7; D.I. 66 at n.8; D.I. 75 at n.4.)  After the Clerk's entry of default, Princeton moved to set aside the entry of default, asserting for the first time that "[t]he Court appeared to expressly have denied Adobe's then-pending motion for default . . . ."  ('408 D.I. 89 at 3.)  Although the parties' submitted a proposed scheduling order laying out their positions on the then-pending request for entry of default (D.I. 63)[5], the Court did not address the merits of Adobe's outstanding request for entry of default at that August 6, 2015 scheduling conference.  A review of the passage Princeton cites states that the Court was "*not in a position to clarify today*" the procedural effect of Adobe's pending request for default. ('408 D.I. 89 at 3 (emphasis added).)

---

[5] Specifically, Adobe proposed that the scheduling order not be entered in this case because of the pending request.  (*Id.* at 3 n.1.)  Princeton disputed "that default judgment motion is proper." (*Id.* at 4.)

## IV.    LEGAL ARGUMENT

### A.    Standard For Setting Aside Entry of Default

In the Third Circuit, "it is well established that a district court ruling on a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1), must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985).  The Third Circuit has also stated that when reviewing an order deciding whether to set aside a default for abuse of discretion on appeal, it is guided by the manner in which the trial court balanced the following factors:  "(1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphases in original).

### B.    Setting Aside the Clerk's Entry of Default Will Prejudice Adobe

Contrary to Princeton's arguments (at 7), Adobe would be prejudiced if the properly entered default is set aside.  Princeton states that it "has already answered the other eight Adobe-related cases, denying Adobe's interpretation of the Adobe Agreement ***and asserting a counterclaim against Adobe for breach of the Adobe Agreement.***"  ('408 D.I. 89 at 7 (emphasis added).)[6]  Princeton also asserts "for all intents and purposes, [its defenses are] identical to the eight other Adobe-related matters."  (*Id.*)  If permitted to file its identical answer here, Princeton

---

[6] Contrary to its purported attempts to "deny[] Adobe's interpretation of the Adobe Agreement," Princeton's counsel has previously agreed with it.  (*See infra* at 9.)

would be permitted to re-assert its counterclaim that the parties have fully briefed in the related cases. (*See, e.g.,* D.I. 53.)  For the reasons discussed below (at 10-11), that counterclaim is frivolous.  Nevertheless, Adobe would be forced to defend against that counterclaim if the default is vacated, imposing additional unwarranted costs on Adobe.

Notably, Princeton does not state whether it would agree to be bound by this Court's decision on its identical frivolous counterclaim in this case.  As a result, permitting Princeton to proceed with filing its answer and counterclaim here would authorize Princeton to waste further judicial and party resources, particularly since during the March 8, 2016 hearing counsel for Princeton "did not recall any motion or briefing directed to Princeton Digital's counterclaims." (Elliott Mar. 28, 2016 Decl. Ex. A at 91:4-6.)  This would undoubtedly prejudice Adobe.

## C.    Princeton Lacks A Meritorious Defense

Princeton argues that it "has meritorious defenses which will be precluded if this Court allows the default to stand." ('408 D.I. 89 at 7.)  In its motion, Princeton fails to set forth any meritorious defense it contends that the Court must consider.  Indeed, Princeton has no defense to Adobe's breach of contract claim.  To be sure, the parties have already fully briefed this precise issue on Adobe's cross-motion for judgment on the pleadings in this case (D.I. 74).

As Adobe has explained in that extensive briefing, there is no genuine issue of material fact that Princeton sued Adobe's customers for use of Licensed Adobe Products in violation of the License's ▮▮▮▮▮▮▮▮▮▮▮▮. (D.I. 75 at 17-20; D.I. 89.)  Both Princeton and its counsel admittedly did not consider the Adobe License, much less make an effort to avoid breaching it before filing suit against Nordstrom.  (D.I. 73 at 5;  D.I. 77 ¶ 13.)

*First*, counsel for Princeton admittedly made no effort to prevent Princeton from suing licensed customers in breach of the Adobe License.  In fact, counsel for Princeton has repeatedly

admitted that he conducted no independent pre-suit investigation prior to filing this lawsuit in violation of Rule 11.[7]  *See Antonious v. Spalding & Eventflo Companies, Inc.*, 275 F.3d 1066, 1073-74 (Fed. Cir. 2002) ("As applied by this court, Rule 11 requires an attorney who filed a patent infringement action to compare the accused device with the construed patent claims.  ***The attorney may consult with his client but may not rely solely on the client's lay opinion that the accused device infringes the patent.  Instead, counsel must make a reasonable effort to determine whether the accused device satisfied each of the claim limitations***." (citations omitted) (emphasis added)).  Not only did counsel for Princeton fail to investigate whether the accused products infringed the asserted patent claims, counsel for Princeton did not even know about the Adobe License ███████████████████████████████ ████████████████████ (D.I. 77 ¶ 13).

    *Second*, Mr. Meagher, Princeton's President and signatory on the ███████ License, admittedly failed to avoid breaching the agreement before filing these lawsuits against licensed Adobe customers.  Neither Mr. Meagher nor his "agent" did anything to confirm whether the JPEG images on Defendants' websites were encoded with Adobe products notwithstanding Princeton's admissions that the metadata showing that the images were encoded using licensed Adobe products was available prior to filing suit.  (*See* Ex. 27 at 15; Ex. 30 at 30:18-23, 31:21-32:20.)  And it "***never occurred***" to Mr. Meagher that the Adobe License or "any licensed software" would "have any impact [on these] . . . litigations" before filing suit.  (D.I. 73 at 5.)  Princeton has, however, admitted that it sued at least four defendants in these related litigations who solely used Adobe licensed software for the activities accused of infringement.  (*See, e.g.,*

---

[7] During the March 8, 2016 hearing, Mr. Pazuniak again reiterated: "Mr. O'Kelly did not make an independent investigation.  He relied on what Mr. Meagher gave him." (Elliott Mar. 28, 2016 Decl. Ex. A at 49:18-20.)

D.I. 73 at 1; D.I. 80-1; Ex. 13 at 1, 2.)  Thus, Princeton has admittedly breached the Adobe

License and Adobe is entitled to damages flowing therefrom.

    *Third*, Princeton's purported attempts to "deny[] Adobe's interpretation of the Adobe

Agreement" ('408 D.I. 89 at 7) again demonstrate Princeton's inconsistent positions and efforts

to needlessly protract this litigation.  During the May 5, 2015 hearing, counsel for Princeton

admitted that Princeton's reading of the License was in fact consistent with Adobe's.

Specifically, Mr. Pazuniak admitted:

> MR. PAZUNIAK: … And if you go down to the bottom, you will see that there is
> a signature here. That signature does not seem to comport with Adobe, but we can
> tell that somewhere here in line, you can see there was apparently Adobe
> Photoshop used as one of the software for this picture somewhere along the line.
> ***We would take the position that this particular image which used Adobe***
> ***Photoshop somewhere along the line, is not infringing.***  On the other hand –
>
> THE COURT: ***Is not infringing because of the license agreement?***
>
> MR. PAZUNIAK: ***Because of the license agreement.***

(Ex. 30 at 29:17-30:4 (emphases added).)  Contrary to Mr. Pazuniak's efforts to cabin these

statements during the March 8 hearing (*see, e.g.*, Elliott Mar. 28, 2016 Decl. Ex. A at 37:2-

39:3)), the May 5, 2015 hearing transcript demonstrates that, under the License, use of Adobe

Photoshop to create JPEG images is not infringing.  (*See, e.g.*, Ex. 30 at 29:17-30:4.)  Here,

Nordstrom has provided uncontroverted evidence that it "only used Adobe Photoshop to create

JPEGs of product images for its website" in 2007.  (D.I. 80-2 at 2-3.)  The Court should reject

Princeton's belated attempts to create a defense to Adobe's breach of contract claim by asserting

a contradictory reading of the License.  *See, e.g.*, *Del. Valley Floral Grp., Inc. v. Shaw Rose*

*Nets, LLC*, 597 F.3d 1374, 1381 (Fed. Cir. 2010) ("'[W]hen a party has given clear answers to

unambiguous questions which negate the existence of any genuine issue of material fact, that

party cannot thereafter create such an issue with an affidavit that merely contradicts, *without*

-9-

*explanation,* previously given clear testimony.' Rather, that affidavit would be a sham." (internal citations and quotations omitted) (emphasis in original)).

*Fourth,* the counterclaim that Princeton says it would re-assert against Adobe for breach of the good faith and fair dealing shows that Princeton's server level infringement theory was ***not*** its basis for filing and maintaining suit against Adobe's licensed customers, including Nordstrom. Princeton's counterclaim avers that Adobe breached the License by failing to provide Princeton with its "list of [] customers" and "refusing to cooperate or assist Princeton to discover whether the defendants actually possessed licenses to Adobe's licensed products, which could have been used to ***post*** otherwise infringing ***images*** on defendants' websites." (D.I. 51 ¶¶ 62, 69 (emphases added).)[8] Further, in opposing Adobe's motion to dismiss this counterclaim, Princeton argued that Adobe had implied obligations to "cooperate and supply corroborating evidence that any defendant was a customer." ('287 D.I. 58 at 8.)[9] Princeton repeatedly represented to Adobe and this Court that Adobe's customer list could prove which defendants were customers and resolve these litigations. (*See, e.g.,* D.I. 17 at 9, 13; D.I. 31 at 11, 17.)[10] Indeed, Princeton admitted that images "which ***used Adobe Photoshop somewhere along the line, [are] not infringing … [b]ecause of the license agreement.***" (Ex. 30 at 29:24-30:4 (emphasis added).)

_____

[8] Although Princeton's assertions are incorrect (*see, e.g.,* D.I. 20 at n.3; D.I. 37 at n.8), the Court need not address this issue to resolve this motion.

[9] Princeton filed its answering brief in opposition to Adobe's motion to dismiss for failure to state a claim in several of the related cases, including J.C. Penney Company Inc. (No. 13-287), but not in the Office Depot case (No. 13-239).

[10] That Princeton sought Adobe's customer lists is a red herring since Adobe provided Princeton uncontroverted evidence that the defendants were Adobe customers on multiple occasions in 2014, ***before*** Adobe moved to intervene in these cases. (*See, e.g.,* D.I. 66 at 6 (citing Exs. 12, 19-22).)

But, according to Princeton's September 9, 2015 opposition to Adobe's renewed motion for sanctions, this information is irrelevant to its alleged infringement theories. According to Princeton, under the alleged server level infringement theory, "the Adobe Agreement did not license Defendants' use of third-party software to encode JPEG images *even if the image may have been processed at some earlier time by Adobe Photoshop*." (D.I. 73 at 13 (emphasis added).) As a result, Princeton's assertion that Adobe breached the License by failing to cooperate in identifying its customers is not only contrary to the uncontroverted facts (Exs. 12, 19-22), it also undermines Princeton's position that the "server level" theory infringement was its basis for suit,[11] and demonstrates that this new theory was presented to this Court nearly two and a half years after instituting litigation to avoid Adobe's renewed motion for sanctions. Princeton's contradictory assertions cannot establish a meritorious defense warranting an order vacating the default.

Unable to identify a genuine issue of material fact precluding judgment on the pleadings, or any defense that the Court must consider on its motion to set aside default, Princeton has no meritorious defense to Adobe's breach of contract claim. Thus, this factor similarly does not weigh in favor of setting aside default.

### D.    The Default Resulted From Princeton's Culpable Conduct

The Clerk's entry of default against Princeton resulted from Princeton's culpable conduct. Courts have explained that "culpable conduct" refers to actions taken willfully or in

---

[11] Notably, none of Princeton's complaints mention "web servers," much less "server level" infringement, as Princeton's basis for suit. Indeed, contrary to Mr. Pazuniak's suggestion that websites and web servers are "interchangeable," he readily admitted they are not: "*websites can only be produced by web servers* and *websites are just images*." (Elliott Mar. 28, 2016 Decl. Ex. A at 33:21-34:3 (emphases added).) The only notice of infringement identified in Princeton's complaints relate to JPEG *images* for display on Defendants' *websites*. (*See, e.g.*, D.I. 1 ¶ 9.)

bad faith. *See, e.g., Gross v. Stereo Component Sys., Inc.,* 700 F.2d 120, 123-24 (3d Cir. 1983); *Jackson v. Delaware Cnty*, 211 F.R.D. 282, 283 (E.D. Pa. 2002). Further, intentional or reckless disregard of communications from the plaintiff or the Court may satisfy the culpable conduct standard, so long as more than "mere negligence" is demonstrated. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1183 (3d Cir. 1984). In addition, the party seeking to set aside the entry of default must act with reasonable promptness to do so. *See Rockwell Transp. Servs., Inc. v. Int'l Printing & Envelope Co., Inc.,* C.A. No. 02–724, 2002 WL 1018928, at *1 (E.D. Pa. May 20, 2002).

Adobe provided Princeton numerous opportunities to respond to its complaint, before and after its time to respond expired. In fact, on June 12, 2015, counsel for Adobe asked Princeton to explain why it believed it need not respond:

> [W]e note that Princeton has not responded to Ken Dorsney's Friday, May 29 email inquiring as to whether Princeton intends to file an answer in response to Adobe's complaint in the Nordstrom case (13-287), as it did in response to Adobe's complaints in the related matters. Nor has Princeton filed its Answer, which was due Monday, June 1. Adobe will not object to Princeton's late-filed answer, provided it is served by Wednesday, June 17. *If Princeton does not intend to answer, please indicate why so that Adobe may consider Princeton's position in assessing next steps, including a request for default under Rule 55.*

('408 D.I. 57-1 Ex. C (emphasis added).) Princeton failed to respond to Adobe's second inquiry too. Princeton intentionally or recklessly disregarded communications from counsel for Adobe.

More than seven months after Adobe's request for default was filed and three days after default was entered, Princeton contends that "Princeton recognized that there were changes in the legal circumstance upon the dismissal of the underlying patent infringement case. In particular, upon the dismissal of the underlying case, the Court no longer had subject matter jurisdiction and Adobe could no longer maintain a cause of action for patent misuse." ('408 D.I. 89 at 2.) If Princeton had believed that the Court lacked subject matter jurisdiction or Adobe failed to state a

-12-

claim upon dismissal of the underlying patent infringement case on May 28, 2015, then Princeton would have filed a motion to dismiss at the time its response to Adobe's complaint was due on June 1, 2015.  Princeton, however, filed no such motion.

In fact, Princeton *first* asserted the Court lacked subject matter jurisdiction over each of the related Adobe cases on August 4, 2015 in the context of drafting the parties' Proposed Scheduling Order for the Court's Rule 16 scheduling conference, which was filed the same date. (*See* Elliott Mar. 28, 2016 Decl. Ex. B; D.I. 63.)  Thus, Princeton's belated arguments seeking to excuse its culpable and dilatory conduct that resulted in Adobe's filing and the Clerk's entry of default are contrary to the actions Princeton and its counsel took when these events actually occurred.  *See Jackson*, 211 F.R.D. at 284 ("The Court considers the extent to which the error is attributable to the defendant and the extent to which it is attributable to defense counsel.").

Unfortunately, Princeton's motion—filed just three days after the Court heard argument on Adobe's renewed motion for sanctions, wherein Adobe displayed some of Princeton's inconsistent and evolving positions for the Court—again demonstrates the familiar pattern and practice of Princeton's ever changing arguments throughout this and the related litigations. (*See also* D.I. 66 at 18-19 (highlighting Princeton's numerous conflicting representations regarding, for example, the extent to which a pre-suit investigation was possible, whether its claims were related to Defendants' use of Adobe-licensed products, whether Defendants' use of Scene7 was covered by the Adobe License, and when and under what circumstances it would dismiss Defendants).)  Princeton failed to act with reasonable promptness in responding to Adobe's complaint and in the seven months after the requested default despite Adobe repeatedly citing to the then-pending request in its papers. (*See* D.I. 66 at n.8; D.I. 75 at n.4).  Indeed, the default

resulted from Princeton's culpable conduct and is of its own making.  This factor too weighs against setting aside default.

### E.    The Effectiveness of an Alternative Sanction

Finally, some courts consider the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions.  *See, e.g., Poulis,* 747 F.2d at 868; *Jackson,* 211 F.R.D. at 283-84.  Absent granting Adobe's motion for sanctions and/or Adobe's motion for judgment on the pleadings, there is no alternative sanction that is as effective as an entry of default.[12]

### F.    CONCLUSION

For the reasons stated above, this Court should deny Princeton's motion to set aside the clerk's entry of default.

---

[12] If, however, the Court is inclined to grant Princeton's motion, Adobe respectfully requests that at a minimum, it impose monetary sanctions on Princeton to compensate Adobe for the time and effort involved in all default-related filings, including its original request for default and opposition to the instant motion, to serve as a "wake-up call" after Princeton repeatedly failed to respond in a timely fashion.  *Jackson,* 211 F.R.D. at 283.

Dated:  March 28, 2016

Respectfully submitted,

Tara D. Elliott (#4483)
Tara.Elliott@wilmerhale.com
Rachel Weiner Cohen (*pro hac vice*)
Rachel.Cohen@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, DC 20006
(202) 663-6000

   */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Intervenor*
*Adobe Systems Incorporated*